**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MICHAEL GRIEGO, personal
representative of the wrongful death estate
of Alec J. Jaramillo, deceased; ANDREW
JARAMILLO; TERESA ROMO,

     Plaintiffs - Appellants,

v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY; LABERTA M. DOUGLAS,
as personal representative of the estate of
Russell E. Douglas,

     Defendants - Appellees.

No. 19-2131
(D.C. No. 1:17-CV-00244-KBM-JHR)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **EBEL**, and **MORITZ**, Circuit Judges.[**]
_____

The parents and estate of Alec Jaramillo appeal the district court's evidentiary

rulings and denial of a motion for judgment as a matter of law. Exercising

jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] This order and judgment is not binding precedent except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.
[**] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument.

**I**

On September 13, 2014, Alec Jaramillo rode his motorcycle west on Santa Fe Avenue in Grants, New Mexico. Russell Douglas, driving his vehicle east on the same road, turned left in front of Jaramillo's motorcycle and the two collided. The collision resulted in Jaramillo's death and the filing of a wrongful death lawsuit by Jaramillo's estate and parents ("Plaintiffs"). At trial, the Plaintiffs asserted that Jaramillo's death was the result of Douglas' negligence in failing to yield the right of way, making an improper left turn, and failure to keep a proper lookout. As part of their case, the Plaintiffs specifically asserted that medical conditions affecting Douglas impaired his ability to safely operate a motor vehicle. In contrast, Douglas presented evidence of his ability to safely operate a motor vehicle and contended that the collision was caused by Jaramillo's speeding.[1]

The trial established that Douglas, waiting in the left turn lane to cross the two lanes of oncoming traffic into a post office entrance, saw an oncoming landscape truck being driven by Troy Jaramillo (who was of no relation to Alec) in the lane nearest to Douglas. This truck, hauling a trailer filled with landscape debris, was driving at approximately 35 mph, the posted speed limit for the road. As the truck approached the intersection, Anthony Sessions, the truck's front seat passenger, heard Jaramillo's motorcycle accelerate behind the truck in the right lane of traffic. After Jaramillo passed the truck on the right, he collided with Douglas' car as

---

[1] Douglas died before the case reached trial. His estate and insurance company litigated this case on his behalf.

Douglas was completing his turn across traffic into the post office. At the jury trial, Sessions testified that he first noticed Jaramillo's motorcycle behind him in the right lane about one-half block back from the intersection when he heard the motorcycle throttle open up, looked back, and saw the motorcycle coming, increasing speed the entire time. He stated that the motorcycle "flew past" the truck, and the collision occurred about 30 feet in front of them, seconds after the motorcycle passed the truck. Sessions testified that the motorcycle was going approximately 40-45 mph and increasing in speed as it passed, and that Douglas had time to safely turn in front of the truck, which was driving at the speed limit. The truck was able to brake and avoid the accident that occurred two to three car-lengths ahead of it. After the truck pulled to the side of the road, Sessions sought medical assistance for Jaramillo. Jaramillo died at the scene.

At trial, both sides presented eyewitness and expert accident reconstruction testimony to support their respective interpretations of the accident. The jury returned a verdict finding Douglas not negligent. During the trial, the Plaintiffs sought to introduce expert testimony on the effect of noise volume on eyewitness perception of speed, to admit accident reports on the collision, and to impeach the eyewitness testimony of Sessions by introducing citizen complaints made against him in his capacity as a law enforcement officer. The district court excluded all three. The Plaintiffs appeal these rulings, along with what they contend were the district court's erroneous admissions of evidence concerning legal modifications to the motorcycle and motorcycle helmet testimony. Finally, the Plaintiffs contend that the district

3

court erred in denying a motion for judgment as a matter of law, or, in the alternative, for a new trial, based on their view that New Mexico law mandates the conclusion that Douglas' left turn was negligence per se.

## II

New Mexico law governs this diversity case.  See Stickley v. State Farm Mut. Auto. Ins. Co., 505 F.3d 1070, 1076 (10th Cir. 2007).  "The admission or exclusion of evidence lies within the sound discretion of the trial court and cannot be reversed absent an abuse of discretion."  Robinson v. Mo. Pac. R. Co., 16 F.3d 1083, 1086 (10th Cir. 1994).  A district court abuses its discretion when "its decision is based on clearly erroneous factual findings or the misapplication of legal standards."  Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowner's Ass'n, Inc., 685 F.3d 977, 981 (10th Cir. 2012).  "An erroneous admission of evidence is harmless unless it had a substantial influence on the outcome or leaves one in grave doubt as to whether it had such an effect."  James River Ins. Co. v. Rapid Funding, LLC, 658 F.3d 1207, 1212 (10th Cir. 2011) (quotation omitted).

## A

The Plaintiffs contend that the court abused its discretion in excluding testimony from the Plaintiffs' accident reconstruction expert, Dennis O'Brien, about the "effect of motorcycle sound level on an individual's ability to estimate the motorcycle's speed."   Under Federal Rule of Evidence 702, the party offering expert testimony bears the burden of establishing its admissibility.  United States v. Nacchio, 555 F.3d 1234, 1241 (10th Cir. 2009).  Under Rule 702, expert testimony is

4

admissible only if (a) the witness' expertise "will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

To determine whether proposed expert testimony is based on reliable methods and principles, the following factors are relevant: "(1) whether the particular theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has achieved general acceptance in the relevant scientific or expert community." United States v. Baines, 573 F.3d 979, 985 (10th Cir. 2009) (citing Daubert v. Merrell Dow Pharm., 509 U.S. 579, 593-94 (1993)). To fulfill its gatekeeping function to ensure that the expert testimony offered by Plaintiffs rested "on a reliable foundation and is relevant to the task at hand," id. (quotation omitted), the district court held two Daubert hearings. It ultimately precluded the expert testimony on the effect of motorcycle sound levels on eyewitness perception of speed.

Plaintiffs sought to have O'Brien testify that increased decibel levels result in increased speed estimates on the basis of an article in The Accident Reconstruction Journal titled "Estimates of Motorcycle Speed Made by Eyewitnesses Under Ideal Experimental Conditions," and a reference to one treatise. Rather than supporting the

5

conclusion that the testimony was relevant and based on a reliable foundation, O'Brien testified that the article was "all over the place" on its conclusions and their bases and that the article's findings did not show that witnesses overestimated speed based on volume. He also agreed that its only statistically significant finding was that witness accuracy varied based on the observer's self-perceived ability to estimate speeds. Further, O'Brien acknowledged that the article's conclusions were based on preliminary experimental data from one controlled experiment and he did not know whether the article had been peer reviewed, although he presumed it had. The article's data on the relation of sound to a witness' accuracy was therefore neither reliable nor relevant. As to the treatise relied upon by O'Brien, it merely supported the conclusion that people are poor estimators of speed—testimony that the district court allowed. The district court's decision to exclude this testimony was an appropriate exercise of its gatekeeping function under Daubert.

**B**

Plaintiffs next argue that the district court abused its discretion when it excluded the Plaintiffs' proffered accident reports on the basis of New Mexico law prohibiting their admission. N.M. Stat. Ann. § 66-7-213(B). The Federal Rules of Evidence generally govern the admissibility of evidence in a diversity lawsuit. Sims v. Great Am. Life Ins. Co., 469 F.3d 870, 877 (10th Cir. 2006). State law applies, however, when it "reflects substantive concerns or policies." Id. at 880.

6

New Mexico courts have not interpreted the provision barring admission of accident reports or evaluated whether it is substantive, but a New Mexico federal district court held that:

> Pursuant to NMSA 1978, § 66-7-213(B), an accident report is inadmissible in any trial, civil or criminal. Although New Mexico state courts have not addressed the statute's substantive concerns or policies, common and legal sense would surmise that admitting a uniform crash report replete with conclusions and causation would transform the investigating officer from a witness to the trier-of-fact; and accordingly usurp the jury's responsibility to interpret the facts. The Court, thus, finds that Section 66-7-213(B) reflects substantive concerns with respect to the weight a jury may afford a crash report. Based on this finding, state law applies and the uniform crash report is excluded pursuant to Section 66-7-213(B).

Perea v. Conner, 2015 WL 11111478, at *1 (D.N.M. Apr. 8, 2015). We agree.

Plaintiffs argue that the prohibition in § 66-7-213(B) applies only to accident reports made by the entities listed in § 66-7-213(A), but the text and structure of New Mexico's statutory scheme dealing with accident reporting does not support this interpretation. "It is the policy of New Mexico courts to determine legislative intent primarily from the legislation itself. . . . If the intentions of the Legislature cannot be determined from the actual language of a statute, then [courts] resort to rules of statutory construction, not legislative history." Regents of the Univ. of N.M. v. N.M. Fed'n of Teachers, 962 P.2d 1236, 1246 (N.M. 1998) (citation omitted). As explained by the New Mexico Supreme Court, the "principal objective in the judicial construction of statutes is to determine and give effect to the intent of the legislature. [Courts] will construe the entire statute as a whole so that all the provisions will be considered in relation to one another. Statutes must be construed so that no part of

7

the statute is rendered surplusage or superfluous." Id. (citations and quotations omitted).

New Mexico's statutes establish a series of requirements to notify and make written accident reports to the New Mexico Department of Transportation. See N.M. Stat. Ann. §§ 66-7-201 et seq. They also create duties for a variety of third parties to report accidents or damage (e.g., medical examiners, garages, dealers, and wreckers, as well as drivers), and impose a duty on drivers to provide information in accident investigations and render aid. See N.M. Stat. Ann. §§ 66-7-211, 66-7-212, 66-7-203. The prohibition on the use of accident reports as evidence in any civil or criminal trial arising out of an accident operates as part of a comprehensive statutory scheme governing accident reporting obligations. Plaintiffs' argument that the prohibition on the use of accident reports at trials applies only to those listed in § 66-7-213(A) is unpersuasive given the structure of New Mexico's statutory scheme—a structure that not only requires reporting for the purposes of public safety but also prevents the mandatory reporting from being used against a driver in subsequent litigation. Additionally, interpreting the statute as advocated by the Plaintiffs would render the limited exception to the exclusion of accident reports in § 66-7-213(D) a nullity, a result that is contrary to the requirement to construe the statute as a whole and ensure that no part is rendered superfluous. See § 66-7-213(D) (allowing an accident report to be introduced in any arbitration or civil action to establish whether the owner or operator of a motor vehicle is insured or uninsured).

8

We agree with the conclusion in Perea, 2015 WL 11111478, at *1, that § 66-7-213(B) reflects substantive concerns or policies of the state of New Mexico about the weight that a jury would afford an accident report, and further note that it also operates to encourage filing accident reports. As such, the statute bars their admission in subsequent civil or criminal trials, and the district court did not abuse its discretion in excluding the accident reports proffered by the Plaintiffs.[2]

## C

In addition to the claims above, the Plaintiffs argue that the district court improperly limited their cross-examination of Sessions, the passenger in the oncoming truck and eyewitness to the accident. At trial, the Plaintiffs sought to impeach Sessions by introducing citizen complaints made against him in his capacity as a law enforcement officer. After the Defendants objected to these questions as irrelevant to Sessions' testimony as a fact witness, the Plaintiffs made no offer of proof to preserve their objection on appeal. "To preserve an objection to the exclusion of evidence for appeal, the proponent must make an offer of proof at trial, first, describing the evidence and what it tends to show and, second, identifying the grounds for admitting the evidence." United States v. Roach, 896 F.3d 1185, 1191 (10th Cir. 2018) (quotation omitted). "An offer of proof is generally necessary to preserve an excluded line of cross-examination questioning. Federal Rule 103 does

---

[2] Because of our determination that the accident reports were inadmissible under New Mexico law, we do not address the Plaintiffs' arguments for their admission under possible hearsay exceptions.

9

not carve out any exception for questions posed on cross." Id. at 1192 (quotation omitted).  Because the context of the Plaintiffs' cross-examination questions does not make clear the nature of the excluded evidence or the ground for its admission, and because the Plaintiffs made no offer of proof, they have forfeited their argument that the district court improperly limited the cross-examination of Sessions.[3]  See id.

**D**

Modifications to Jaramillo's motorcycle were a central issue at trial, and after significant litigation the district court excluded "evidence and testimony describing [the] motorcycle as illegal" but allowed "evidence and testimony describing the condition and components, or missing components, of the motorcycle."  Asserting that only the legality of any motorcycle modifications is determinative, the Plaintiffs contend that the district court erred in allowing evidence concerning legal modifications to the motorcycle.

In addition to their failure to identify any legal error in the district court's ruling, the Plaintiffs also fail to show that the asserted erroneous admission of

---

[3] Similarly, the Plaintiffs now complain that: (1) Sessions' testimony on his prior employment as a law enforcement officer impermissibly bolstered his credibility; and (2) the district court "allowed the defense to circumvent the prohibition on motorcycle helmet evidence."  But the Plaintiffs failed to object to these two rulings at trial.  "Arguments raised for the first time in a civil appeal may be reviewed only for plain error." Tesone v. Empire Mktg. Strategies, 942 F.3d 979, 991(10th Cir. 2019) (quotation omitted).  Because the Plaintiffs did not argue for plain error review in their opening brief, these arguments are also forfeited.  See Kitchen v. Herbert, 755 F.3d 1193, 1208 (10th Cir. 2014) ("[T]he omission of an issue in an opening brief generally forfeits appellate consideration of that issue.") (quotation omitted).

evidence was harmful.  See James River, 658 F.3d at 1212.  The Plaintiffs—who argue that the modifications to the motorcycle "do not render a vehicle unsafe . . . [or form] a basis for comparative negligence"—cannot demonstrate that the admission of evidence regarding legal motorcycle modifications was harmful.  The jury found that Douglas was not negligent.  Because comparative negligence is relevant only after a defendant is found to be negligent, we conclude that the admission of this evidence was not harmful.  See Scott v. Rizzo, 634 P.2d 1234, 1240 (N.M. 1981) ("The thrust of [New Mexico's] comparative negligence doctrine is to [ ] accomplish apportionment of fault between or among negligent parties whose negligence proximately causes any part of a loss or injury . . . ." (emphasis added)).  Given the clear relevance of the motorcycle modifications to the accident's causation and to the jury's understanding of the various experts' testimony, we cannot conclude that the district court's careful ruling on the issue was an abuse of discretion.

### III

Finally, the Plaintiffs contend that the district court erred in denying a motion for judgment as a matter of law, or, in the alternative, for a new trial.  We review the denial of a motion for judgment as a matter of law de novo, using the same legal standard as the district court.  Greene v. Safeway Stores, Inc., 98 F.3d 554, 557 (10th Cir. 1996).  In conducting our review, we "consider the record in its entirety and draw all reasonable inferences in favor of the nonmoving party," but do not "weigh the evidence, pass on the credibility of witnesses, or substitute our conclusions for that of the jury."  Miller v. Eby Realty Group LLC, 396 F.3d 1105, 1110-11 (10th

11

Cir. 2005) (quotations omitted). Judgment as a matter of law is only proper when "the evidence and all inferences to be drawn therefrom are so clear that reasonable minds could not differ on the conclusion." Id. at 1110 (quotation omitted). Under Rule 59, a new trial may be granted if the verdict is against the weight of the evidence, if the damages were excessive, if for some reason the trial was unfair to the moving party, or if questions of law arise from substantial errors in admitting or rejecting evidence or instructions to the jury. See Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940).

We have already determined that the district court did not err in its evidentiary rulings. Negligence is a question for the factfinder, and, after a full trial, the jury determined that Douglas was not negligent. The district court denied the Plaintiffs' motion for judgment as a matter of law because it concluded there was substantial evidence that Douglas was not negligent in the accident causing Jaramillo's death. After reviewing the record, we agree. The jury was provided with evidence supporting both parties' contentions on the cause of Jaramillo's death, and reasonably determined that Douglas was not negligent. The Plaintiffs' contention that Douglas was negligent as a matter of law fails. The trial court instructed the jury on New Mexico's law on negligence per se and on requiring a person making a left-hand turn to yield to another vehicle "which is within the intersection or so close thereto as to constitute an immediate hazard." See N.M. Stat. Ann. § 66-7-329. After evaluating all the evidence presented and being correctly instructed, the jury determined that Douglas was not negligent, thereby necessarily determining that he did not violate

12

this statute. There was no abuse of discretion in denying the Plaintiffs' motion for judgment as a matter of law or for a new trial.

**IV**

Affirmed.

Entered for the Court

Carlos F. Lucero
Circuit Judge